**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 23-55-DLB-CJS**

**JAMES DIMITT, et al.**                                              **PLAINTIFFS**


**v.**               **MEMORANDUM OPINION AND ORDER**


                                                      **DEFENDANT**

**STATE FARM FIRE AND CASUALTY**

**\*\*\* \*\*\* \*\*\* \*\*\***

        This matter is before the Court upon the Motion to Dismiss, or in the Alternative, for Summary Judgment filed by Defendant State Farm Fire and Casualty Company[1] ("Defendant").  (Doc. # 5).   Plaintiffs James Dimitt and Ava Dimitt ("Plaintiffs") filed a Response (Doc. # 9), State Farm filed a Reply (Doc. # 14), and the Motion is now ripe for review.   For the reasons stated herein, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. # 5) is **granted in part** and **denied in part.**

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

        This matter concerns a homeowner's insurance policy, identified as Policy No. 17-B5-C515-9 (the "Policy"), which Defendant, as insurer, issued to Plaintiffs, as insureds. (Doc. # 1-1 ¶ 7).  Plaintiffs took out the Policy to insure against potential damage to their home located at 7120 Warsaw Road, Dry Ridge, Kentucky (the "Residence") as well as a barn on their property.  (*Id*. ¶¶ 6, 9, and 10).  Although Plaintiffs acknowledge that they

---

[1]      Defendant asserts that it is properly referred to as "State Farm Fire and Casualty Company" and that it was improperly identified as "State Farm Fire and Casualty" in the Complaint.  (Doc. # 6 at 1).

"maintained homeowner[']s insurance through Defendant . . . for many years[,]" they claim that they never received a copy of the Policy.  (Docs. # 10-1 ¶¶ 5-6 and 10-2 ¶¶ 5-6).

On or about June 19, 2021, a severe windstorm allegedly caused damage to the Residence and the barn.  (Doc. # 1-1 ¶¶ 8-9).  After Plaintiffs "promptly" submitted a claim to Defendant seeking coverage for the damage, Defendant, on July 26, 2021, submitted a letter to Plaintiffs partially denying their claim.  (*Id*. ¶ 11 and at 20).  In the letter, Defendant noted that the Residence and barn were inspected by Gregory D. Long, an engineer with Donan Engineering Co., Inc.  (*Id*. at 20).  In his written report, Mr. Long stated that he observed some damage to the Residence and barn that was caused by wind or hail, which is covered by the Policy.  (*See id*.).  However, Mr. Long determined that some of the damage he observed was caused by factors that are expressly excluded from the Policy.  (*See id*.).  The July 26, 2021 letter quoted the Policy at length, including the following language:

> 6. Suit Against Us.  No action will be brought against **us** unless there has been full compliance with all of the policy provisions.  Any action by any party must be started within one year after the date of loss or damage.

(*Id*. at 25) (emphasis in original).

On September 17, 2021, Robert Salyers, another engineer with Donan, conducted a second inspection of the Residence and barn.  (*See id*. ¶ 12 and at 16).  On October 1, 2021, Defendant submitted a letter to Plaintiffs again partially denying their claim for coverage.  (*Id*.).  According to this letter, Mr. Salyers concluded that damage to the porch roof and supports of the Residence as well as damage to the barn's framing was inconsistent with wind damage and/or was due to "wear and tear and creep" not covered

by the Policy.  (*Id*.).  Defendant attached the July 26, 2021 letter—including its quotations of Policy language—to the October 1, 2021 letter.  (*See id*.).

On March 2, 2022, Defendant sent Plaintiffs a letter notifying them that unless the "wind damage to the house and barn have been repaired," the Policy would not be renewed "effective March 18, 2023."  (Doc. # 10-7 at 1).  Thereafter, Mr. Dimitt contacted Cole Engineering Solutions regarding a potential third inspection of the Residence and barn.  (*See* Doc. # 10-8).  On July 15, 2022, Cole sent Plaintiffs a report which differed from the prior Donan reports.  (*See id*.).  Around this time, Plaintiffs' retained Attorney Randy J. Blankenship as counsel.  (*See* Doc. # 10-9).

On October 17, 2022, Mr. Blankenship sent a letter to Defendant notifying Defendant that he had been retained by Plaintiffs and requesting that Defendant "reconsider [its] denial of [Plaintiffs'] claim."  (*Id*.).  Mr. Blankenship also included a copy of the Cole report with the letter.  (*See id*.).  On November 1, 2022, Defendant sent a letter to Mr. Blankenship acknowledging receipt of his prior letter.  (Doc. # 10-10).  This letter noted that a copy of the Cole report was sent to Mr. Salyers "for review and response," and that "[o]nce a response is received, [Defendant] will be in contact."  (*Id*.).  On November 23, 2022, Defendant sent a letter to Mr. Blankenship informing him that Mr. Salyers had completed his review of the Cole report and that "based on the review, [Defendant's] position remains unchanged."  (Doc. # 14-3).  On December 28, 2022, Defendant sent a letter to Plaintiffs notifying them that the Policy would be cancelled effective March 18, 2023.  (Doc. # 10-11).

On April 10, 2023, Plaintiffs filed suit in Grant Circuit Court against Defendant.  (*See* Doc. # 1-1 at 1).  They assert claims of breach of contract and statutory bad faith in

violation of the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA").  (Doc. 1-1 ¶¶ 14-21).  Plaintiffs claim that because of Defendant's actions, they have sustained property damages "which will cost in excess of $195,766.79 to repair."  (*Id*. ¶ 16).  On April 28, 2023, Defendant filed a Notice of Removal with this Court.  (Doc. # 1).

Also on April 28, 2023, Defendant filed the instant Motion to Dismiss, or in the Alternative, for Summary Judgment.  (Doc. # 5).  Defendant argues that Plaintiffs' claims are subject to the one-year suit limitations provision in the Policy.  (Doc. # 6 at 5-9).  Defendant argues that because this action was filed over one year and nine months after the storm damage, Plaintiffs' claims are untimely and should be dismissed.  (*Id*.).  In the alternative, Defendant argues that it is entitled to judgment as a matter of law that Plaintiffs' claims are time-barred.  (*Id*. at 4).  Plaintiffs filed their Response (Doc. # 9) together with certain exhibits (Doc. # 10), Defendant filed its Reply and certain exhibits (Doc. # 14), and the Motion is now ripe for review.

## II.   ANALYSIS

### A.   Standard of Review

Defendant has filed a motion to dismiss or, in the alternative, a motion for summary judgment.  Defendant asserts that Plaintiffs' claims are barred by the Policy's suit limitations provision, which is an appropriate basis for a Rule 12(b) motion to dismiss. *See McClure for McClure v. K & K Insurance*, 2023 WL 2480728, at *4 (E.D. Ky. Mar. 13, 2023).  However, Plaintiffs in their Response and Defendant in its Reply have included additional materials in support of their positions and have each relied upon materials extrinsic to the Complaint.  Therefore, the Court will treat Defendant's motion as one for summary judgment under Federal Rule of Civil Procedure Rule 56.  *See* Fed. R. Civ. P.

12(d); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)*; Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact."  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  It must produce evidence showing that a genuine factual issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

Federal courts apply the substantive law of the forum state in diversity actions. *See City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994)). Therefore, Kentucky substantive law will apply to Plaintiffs' claims of breach of contract and statutory bad faith in violation of KUCSPA.

**B.    Analysis**

The material facts are not in dispute.  Both parties agree that (i) Plaintiffs maintained homeowners' insurance through Defendant; (ii) the alleged wind event occurred on June 19, 2021; (iii) Defendant partially denied Plaintiffs' claim via letter on July 26, 2021 and again on October 1, 2021; and (iv) Plaintiffs did not initiate this action until April 10, 2023.  (*See* Docs. # 1-1 at 1, # 6 at 1-3, and # 9 at 2-4).  Considering these undisputed facts, the Court will assess whether Defendant is entitled to judgment as a matter of law.

Defendant argues that it is entitled to judgment as a matter of law because Plaintiffs' claims are barred by the Policy's one-year suit limitations provision.  Kentucky law has long recognized "the validity of insurance contract provisions requiring as a condition to sue that the action must be commenced within the time specified by the policy." *Edmonson v. Penn. Nat. Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 756 (Ky. 1989) (internal citations omitted).  Courts typically enforce such provisions unless they unreasonably limit the time in which parties can sue.  *See Ashland Finance Co. v. Hartford Accident & Indemn. Co.*, 474 S.W.2d 364, 366 (Ky. 1971).  However, K.R.S. § 304.14-370 places additional restrictions on an out-of-state insurer's ability to contractually limit the time in which a party can file suit, stating that "no conditions, stipulations or

6

agreements in a contract of insurance shall . . . limit the time for commencing actions against insurance companies to a period of less than one year from the time when the cause of action accrues."  *Id.*

The Sixth Circuit addressed this statute with respect to a suit limitations provision and a breach of contract claim in *Smith v. Allstate Ins. Co.*, 403 F.3d 401 (6th Cir. 2005). Finding that Kentucky courts had repeatedly enforced insurance contract provisions under which the time for suit began to run before the insured had the right to sue, the Sixth Circuit ultimately concluded that the limitations provision was not inconsistent with K.R.S. § 304.14-370.  *Id.* at 405.  The Sixth Circuit also acknowledged that a suit limitation provision may not be enforceable if it does not give a party a reasonable time to sue. *Smith*, 403 F.3d at 405-06.

Following *Smith*, district courts in the Sixth Circuit applying Kentucky law have concluded that "the date of loss is not synonymous with the date of accrual" for all claims. *See Howard v. Allstate Ins. Co.*, 2014 WL 5780967, at *4 (E.D. Ky. Nov. 5, 2014) (quoting *Price v. AgriLogic Ins. Servs., LLC*, 37 F. Supp. 3d 885, 892 (E.D. Ky. 2014)).  In *Tennant v. Allstate Ins. Co.*, this Court found that the date of accrual for a claim of bad faith under an insurance policy did not accrue under K.R.S. § 304.14-370 until the denial of the plaintiff's claim for coverage, which was after the date of loss.  2006 WL 319046 (E.D. Ky. Feb.10, 2006); *see also Howard*, 2014 WL 5780967, at *4 (citing *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 591 (6th Cir. 2004) (holding "legal rights and obligations vest when the last event necessary to create the cause of action occurs.")).  Thus, while the Sixth Circuit held in *Smith* that a suit limitations period that accrues on the date of the loss is valid for a breach of contract claim, the accrual date may vary for other claims.  *See Howard*, 2014

WL 5780967, at *4 ("[A] limitations period . . . must provide a party one year to bring suit from the accrual date of the action, *which may vary between claims brought in a single suit*.") (emphasis added).

As *Smith* is still good law in the Sixth Circuit, the Court finds that the suit limitation provision applies to Plaintiffs' claim for breach of contract. *See Price*, 37 F.Supp.3d at 894. Because Plaintiffs do not dispute that the date of loss was June 19, 2021, they needed to file suit by June 19, 2022 to preserve their claim for breach of contract. Instead, Plaintiffs waited until April 10, 2023 to file their suit in Grant Circuit Court. (*See* Doc. # 1-1). Absent a finding of unreasonableness, of which there is no evidence, the breach of contract claim is time barred.

However, the same cannot be said of Plaintiffs' statutory bad faith claim. Plaintiffs' bad faith claim is predicated on Defendant's alleged failure to investigate and wrongful denial of Plaintiffs' claim for coverage. (*See* Doc. # 1-1 ¶¶ 19-21). At the earliest, such claims accrue when an insurer denies a plaintiff's claim for coverage. *See Tennant*, 2006 WL 319046, at *7; *see also Howard*, 2014 WL 5780967, at *5. Thus, the earliest Plaintiffs' bad faith claim could have accrued was when Defendant sent the first partial denial letter on July 26, 2021. The Policy required Plaintiffs to bring suit by June 19, 2022, effectively giving Plaintiffs approximately eleven months to assert their bad faith claim. This time limit does not satisfy KRS § 304.14-370's one-year timeframe. Accordingly, Defendant is not entitled to judgment as matter of law as to Plaintiffs' bad faith claim.

Based on the above, the Court will grant Defendant's Motion as to the breach of contract claim but deny the Motion as to the statutory bad faith claim. Before doing so, however, the Court must address three specific arguments Plaintiffs raise in their

Response.  (*See* Doc. # 9).  First, Plaintiffs argue that they were "never provided a copy of the [Policy] and, as a result, there could be no meeting of the minds as to the shortened period for bringing suit."  (*Id*. at 1).  Second, Plaintiffs argue that Defendant has failed to show that all conditions precedent to bringing suit were met and accordingly the Court cannot determine whether this action is untimely.  (*Id*. at 1-2). Third, Plaintiffs argue that Defendant informed Plaintiffs that their claim was still under review as late as November 1, 2022, and that the claim accordingly had not accrued prior to that date.  (*Id*. at 2).  Each of these arguments fail.  Having determined that Plaintiffs' statutory bad faith claim survives the Motion, the Court shall only assess these arguments as they concern Plaintiffs' breach of contract claim. The Court shall address the arguments in turn.

### 1. Defendant's Supposed Failure to Provide Plaintiffs with a Copy of the Policy is Immaterial in the Circumstances

Plaintiffs first argue that they "did not agree to a shortened limitations period . . . because they were not provided with a copy of the [P]olicy."  (Doc. # 9 at 6).  According to Plaintiffs, because they were not provided a copy of the Policy, they "did not, therefore, assent to the limitation at the time of contracting."  (*Id*.).  The Court disagrees.

Even if Plaintiffs never received a copy of the Policy, this, standing alone, does not invalidate the suit limitations provision.  In the Complaint, Plaintiffs acknowledge that they entered the Policy to insure their home.   (Doc. # 1-1 ¶ 7).   Plaintiffs elsewhere acknowledge that they "have maintained homeowners['] insurance through Defendant . . . for many years prior to June of 2021."  (Docs. No. 10-1 ¶ 6 and 10-2 ¶ 6).  Plaintiffs also attach to the Complaint certain Policy documents and correspondence from Defendant that quoted the limitations provision.  (*See* Doc. # 1-1 at 6-27).  Thus, Plaintiffs both expressly and impliedly acknowledge having entered the Policy.  In similar circumstances,

9

the Sixth Circuit has noted that an insured's failure to receive a copy of an insurance policy does not preclude application of the policy's suit limitations provision. *Jones v. Allstate Ins. Co.*, 1994 WL 677676, at *3 (6th Cir. Dec. 2, 1994) (per curiam) (collecting cases from other jurisdictions). In the apparent absence of any contradictory Kentucky caselaw, the Court concludes that Plaintiffs' alleged non-receipt of the Policy does not invalidate its suit limitations provision. *See Midwest Mut. Ins. Co. v. Wireman*, 54 S.W. 3d 177, 182 (Ky. App. 2001) ("[T]he mere lack of knowledge of the contents of a written contract for insurance cannot serve as a legal basis for avoiding its provisions."). Plaintiffs' first argument accordingly lacks merit and is rejected.

### 2. Defendant is not Required to Prove Compliance with all Policy Terms Before Plaintiffs' Breach of Contract Claim Accrued

Plaintiffs next argue that Defendant "has offered no evidence of when [Plaintiffs] had fully complied with all [P]olicy provisions," and that without such evidence the Court cannot determine when Plaintiffs' claims accrued. (Doc. # 9 at 8). For reference, the suit limitations provision provides as follows:

> 6. Suit Against Us. No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

(*Id*. at 25) (emphasis in original). Because the Policy requires full compliance with its provisions before bringing suit, Plaintiffs argue that determining whether their claims accrued requires a showing that they have fully complied with the Policy. (Doc. # 9 at 8-9). The Court disagrees.

Plaintiffs do not cite—and the Court is unaware of—any caselaw requiring an insurer in these circumstances to prove an insureds' full policy compliance before a breach of contract claim can be said to have accrued. Indeed, such a requirement

appears to run contrary to applicable caselaw.  Albeit in unpublished opinions, the Kentucky Court of Appeals has construed substantially identical suit limitations language as that in the Policy to cause a claim to accrue on the date of loss.  *See Gibbons v. Ky. Farm Bureau Mut. Ins. Co.*, 2016 WL 3176440, at *1-3 (Ky. App. May 27, 2016); *see also Wooton v. Ky. Farm Bureau Mut. Ins. Co.*, 2015 WL 860752, at *1-3 (Ky. App. Feb. 27, 2015).  In the apparent absence of any on-point published opinions holding otherwise, the Court takes these decisions as persuasive authority.  *See Smith*, 403 F.3d at 405 ("Under Kentucky law, it appears, a cause of action for breach of an insurance contract may 'accrue,' in some sense, before the claimant is entitled to sue.").  Plaintiffs' second argument accordingly lacks merit and is rejected.

### 3. *Plaintiffs' Breach of Contract Claim Accrued Well Before November 1, 2022*

Plaintiffs finally argue that Defendant "still had [Plaintiffs'] claim under review as late as November 1, 2022," and that their claim did not accrue until Defendant "had fully and finally declined the claim."  (Doc. # 9 at 9).  Plaintiffs note that on October 17, 2022, Mr. Blankenship sent a letter to Defendant (i) notifying Defendant that he had been retained by Plaintiffs, (ii) requesting that Defendant "reconsider [its] denial of [Plaintiffs'] claim, and (iii) including a copy of the Cole report.  (*See* Doc. # 10-9).  In response, on November 1, 2022, Defendant sent a letter to Mr. Blankenship acknowledging receipt of his prior letter and stating that the Cole report was sent to Mr. Salyers "for review and response."  (Doc. # 10-10).

As an initial matter, the Court notes that these communications occurred over a year after Defendant partially denied Plaintiffs' claim for coverage on July 26, 2021 and again on October 1, 2021.  Thus, the Court doubts whether Plaintiffs' claim was still

pending when Mr. Blankenship contacted Defendant in October 2022.  However, even if these communications are relevant to when Plaintiffs' claim for coverage was finally declined, they are irrelevant as to when Plaintiffs' breach of contract claim accrued.  Under *Smith*, which remains good law in the Sixth Circuit, Plaintiffs' breach of contract claim accrued on June 19, 2021, the date of the alleged windstorm.  Plaintiffs do not proffer any authority demanding a contrary holding,[2] and the Court is otherwise bound by *Smith*.  Plaintiffs' third argument accordingly lacks merit and is rejected.

## III.   CONCLUSION

Having considered the parties' arguments, the Court will **grant** the Motion as to the breach of contract claim but **deny** the Motion as to the statutory bad faith claim.  Accordingly, it is **ORDERED** that:

(1)     Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. # 5) is **GRANTED** with respect to Count I of Plaintiff's Complaint (Doc. # 1-1); and Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. # 5) is **DENIED** with respect to Count II of Plaintiff's Complaint (Doc. # 1-1); and

(2)     Defendant shall file its Answer **within twenty (20) days from the date of entry of this Order**.

This 23rd day of October, 2023.



Signed By:

*David L. Bunning*

**United States District Judge**

---

[2]     Plaintiffs cite *Hensley v. State Farm Mutal Automobile Insurance Co.*, 2014 WL 3973115 (Ky. App. Aug. 15, 2014) in which the Kentucky Court of Appeals criticized *Smith*. *Id*. at *11 n.15. However, the *Hensley* decision was vacated by the Kentucky Supreme Court on April 5, 2016.